UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

FILED
SEP 30 2005
U.S. DISTRICT COURT
DIST. OF RHODE ISLAND

C.A. No. 99426S

*******************************************************************

ALLSTATE INSURANCE COMPANY
Plaintiff,

v.

RAYMOND HUELBIG, JOSE PIRES, MANRAY, INC. D/B/A FRIENDSHIP AUTOBODY, AMITY MOTORS, AND TABCO RENTALS, SHAWNN HUELBIG, CILLA REILLY, RUTH M. ORTIZ, MANUEL P.J. BARROS, II, MILLICENT MAYNARD, GREGORY WILLIAMS, LORI FREEMAN, JULIO SILVA, LYNETTE ANDERSON, KAREN L. BROWN, ROBERT D. TAGLIONE, RICHARD WILLNER, SHONDI BARBATO, ANN MARIE IANNUCCI, NORMAN TRICE, JR., PAULA COFONI, CLARENCE NEALY and TABCO REALTY
Defendants,

*******************************************************************

**AFFIDAVIT OF MICHAEL BRUNO IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT**

I, Michael Bruno, upon oath do depose and state based upon personal knowledge as follows:

1. I am employed as a Special Investigations Unit Analyst by the plaintiff, Allstate Insurance Company (hereinafter referred to as "Allstate").

2. Allstate's Special Investigation Unit (hereinafter "SIU") was established to investigate and respond to inaccuracies and inconsistencies in the presentation of insurance claims, and to monitor the effectiveness of the company's fraud-control efforts.

3. As an SIU Analyst for Allstate, I investigate claims and claims data to detect and combat fraudulent insurance-claim activity.

4. I have investigated hundreds of claims arising out of reported automobile accidents occurring in my geographic area of responsibility, which includes the State of Rhode Island.

5. A significant component of Allstate's business in Rhode Island is the underwriting of automobile insurance policies.

6. A large number of the claims referred to Allstate's SIU during the period described in the Complaint involved Manray, Inc. d/b/a Friendship Autobody, d/b/a Amity Motors and d/b/a Tabco Rental, each of which is operated at 550 Valley Street, Providence, Rhode Island (hereinafter referred to as "Friendship Autobody"). At all material times, Friendship Autobody was owned and operated by Defendants Raymond Huelbig and Jose Pires. Many of these Friendship Autobody claims were investigated by Allstate's SIU. As Allstate investigated these claims, a pattern of fraudulent conduct emerged.

7. In the course of Allstate's investigation in this case, well over one hundred (100) claims files were reviewed, each containing documents maintained by Allstate in good faith in the ordinary course of conducting its business of insurance.

8. On or about April 7, 1997, Allstate learned that Defendant (and Allstate insured) Robert Taglione was under investigation by the Rhode Island State Police.

9. Taglione confessed involvement in a conspiracy to stage motor-vehicle accidents and submit false insurance claims involving Friendship Autobody. (Annexed hereto at 1 is a transcript of Taglione's statement to R.I. State Police).

10. On November 4, 1998, Raymond Huelbig was arrested and charged with, among other things, violations of the Rhode Island Racketeer Influenced and Corrupt

Organizations Act. (Affidavit of Nicholas Tella summarizing the R.I. State Police investigation of Friendship Autobody and Indcitment, annexed hereto at 2).

11. Defendants, Raymond Huelbig, Robert Taglione, Paula Cofoni, Richard Willner, Ann Marie Iannucci, Norman Trice and Shondi Barbato were charged criminally for their role in defrauding Allstate, among others. Taglione and Huelbig were charged with violating the State Racketeer Influenced and Corrupt Organizations Act further to their role in the insurance fraud enterprise.

12. Friendship Autobody was closed in November 1998 per order of the Supreme Court of the state of Rhode Island.

13. The facts set forth below in this affidavit and in Allstate's Complaint were contained in and/or derived from Allstate's business records and/or obtained during Allstate's investigation.

14. Support for the conclusions set forth below results from hundreds of hours of closed claim file analysis of first and third-party automobile insurance claims and analysis of Allstate claims databases once the pattern of defendants' fraudulent conduct began to emerge. Claims files were analyzed for factual data establishing the defendants' well-concealed pattern of insurance fraud. Such analysis would have been impossible and/or unwarranted in the employment of sound business judgment, during the early stages of defendants' scheme to defraud Allstate.

15. Additional support for Allstate's investigatory findings and conclusions is premised upon witness interviews conducted by Allstate or its agents, as well as other interviews and information obtained from public records. The persons interviewed include:

- Robert Taglione
- Linda Palmiscano
- Lori Freeman
- Ruth Ortiz
- Manuel Barros
- Millicent Maynard
- Raymond Huelbig
- Cilla Reilly
- Ruth Ortiz
- Millicent Maynard
- Jose Pires

16. In each claim alleged in Allstate's Complaint, payment by Allstate was made in reliance upon the false insurance documentation submitted by the defendants.

17. By its investigation, Allstate concluded that numerous property damage claims, as well as claims involving personal injury, involving Friendship Autobody were fraudulent. The conclusions reached in each case were supported by substantial evidence, including by way of illustration and not limitation, information supplied by cooperating witnesses, investigators with the National Insurance Crime Bureau and members of federal, state and local law enforcement.

18. As Allstate's investigation evolved, additional tools to detect and deter fraudulent claim activity were employed including analysis of the physical condition of the vehicles that were reportedly involved in the collisions. This analysis was performed by qualified and experienced accident reconstructionists and vehicle damage analysts, all of whom have been qualified as experts by the courts in the state of Rhode Island and Commonwealth of Massachusetts. These experts include: S.D. Lyons, Inc., Dennis Lyons, and Ralph Gemma, President, Gemma & Associates.

19. This insurance fraud conspiracy was originated and principally promoted, financed, operated and maintained by Raymond Huelbig.

20. At various times during the period outlined in Allstate's Complaint, Defendants Nealy, Pires, Huelbig and Taglione agreed to and did work in concert with numerous Allstate insureds including, but not necessarily limited to, Manuel Barros, Ruth Ortiz, Millicent Maynard, Lori Freeman, Robert Taglione, Cilla Reilly, Shawnn Huelbig, Gregory Williams, Lynette Anderson, Karen L. Brown, and Julio Silva, to initiate, maintain, and collect upon fraudulent insurance claims resulting in substantial damage to Allstate Insurance Company's business and property.

21. The fraudulent conduct was well concealed by the conspirators by virtue of the fact that the vast majority of claims advanced by the defendants involved no third-parties.

22. Because at least one Allstate employee (Defendant Clarence Nealy) was engaged in the conspiracy, and in many cases was (1) the person who certified the damages allegedly sustained to the subject vehicles, and (2) certified that the repairs referenced in the appraisals were necessary and/or had been completed, the conspirators were better able to conceal the false claims submitted to Allstate.

23. Allstate's detailed analysis of the closed files (considered in light of the active files at the time), and concurrent field investigation revealed the following:

> (1) the majority of fraudulent claims advanced through Friendship Autobody involved vehicles that were either purchased by the Allstate insured Defendants from one of the businesses operating under the Manray, Inc., corporate entity (i.e., Friendship Autobody, Tabco Rental and, in most instances, Amity Motors);
>
> (2) in a majority of claims, Amity Motors and/or Friendship Autobody retained a security interest in the form of a lien on the vehicle used to advance the fraudulent claim;

(3) as mentioned above, the majority of fraudulent claims advanced through the Friendship Autobody involved no identified third-party and thus there were no conflicting reports of the alleged accidents/collisions;

(4) the majority of fraudulent claims advanced through Friendship Autobody resulted from alleged accidents caused by Acts of God (hurricanes, other weather related conditions), vandalism, unidentified hit-and-run "collisions" and collisions caused where the insured defendants were "caused" to crash their vehicles to avoid an unidentified second vehicle who then would allegedly fled the scene;

(5) many of the vehicles insured by Allstate and utilized by the defendants to pursue the false claims, were transferred back and forth between defendants, Amity Motors and/or Friendship Autobody;

(6) often upon retransfer of the vehicle to a new defendant, a different insurance carrier would be victimized thus concealing the ongoing fraudulent activity from Allstate. See Amity Motors Lienholder Schematic at 3; Barros Chain Graphic at 4.

24. During the majority of the claims advanced by the Friendship Autobody Insurance Fraud Ring, the conspirators further concealed their conduct by confining their fraudulent efforts to advancing property damage claims only. This strategy diminished the likelihood that the accident/collision would attract suspicion in that (1) there were no claims for bodily injury; (2) no third parties who could contradict the accident scenarios described by the defendants; and (3) knowledgeable body-shop operators and appraisers, including Defendant (and former Allstate Appraiser) Clarence Nealy, whose expertise allowed the conspirators to manufacture and/or exaggerate legitimate damage that was not easily detected, could not be reasonably questioned by Allstate in contractual good faith, and involved relatively small amounts of money. Operating the insurance fraud ring in this manner allowed the conspirators to go undetected for several years.

25. In an effort to better understand the web-like relationships between the defendants' participation in the Friendship Autobody Insurance Fraud Ring, Allstate

prepared graphic displays based on its claims data to outline the relationships between (1) the vehicles involved in the fraudulent scheme, and (2) the insured defendants who utilized the vehicles to pursue false claims. (Claim history charts of Defendants Barros, Huelbig, Ortiz, Maynard, Reilly, Silva, Williams and Brown annexed hereto at Tabs 5 through 12; see also Tabs 3 and 4.

26. Defendant Norman Trice was arrested, and plead *nolo contendre* to a charge of insurance fraud in September of 1996.

27. On November 11, 1999, Defendant Norman Trice, Jr. submitted to a Statement Under Oath during which he outlined his role in the Friendship Autobody conspiracy. Trice admitted that he (along with Defendants Robert Taglione and Paula Cofoni) intentionally staged the August 24, 1995, alleged hit-and-run accident involving Taglione's 1984 Cadillac DeVille. (Norman Trice November 11, 1999, transcript, annexed hereto at 13).

28. Trice was deposed on February 27, 2001 (a copy of the transcript of which is annexed hereto at 14). During his deposition, Trice reiterated and confirmed his earlier testimony regarding his participation in this Friendship Autobody conspiracy.

29. On January 14, 2000, Defendant Gregory Williams voluntarily submitted to a Statement Under Oath during which he outlined his relationship with defendants Raymond Huelbig and Manuel Barros and confessed his subsequent participation in the Friendship Autobody conspiracy. (A copy of the transcript of Williams Statement Annexed hereto at 15).

30. During his Statement Under Oath, Williams detailed how he was solicited by Barros to participate in staged automobile insurance claims. This activity included

Williams' "purchase" of a Lincoln Continental from Amity Motors, which vehicle was later used as a platform from which the conspirators pursued false claims against Williams' Allstate's insurance policy. Williams was never required to (nor did he) pay any amount to Amity Motors in exchange for the Lincoln Continental. Instead, payment was made by Williams through his participation in the false claims--allowing his fellow conspirators (most notably, Barros and Huelbig) access to the vehicle upon request to pursue false insurance claims. See Tab 15.

31. Williams also acknowledged that he provided false information to Allstate in connection with claim investigations arising in connection with the claims advanced by the Friendship Autobody conspirators as outlined in Allstate's Complaint.

32. On March 1, 2001, Defendant Ann Marie Iannucci was deposed (a copy of the transcript which is Annexed hereto at 16) during which she confessed to her role in the Friendship Autobody conspiracy.

33. Iannucci testified that she had been solicited by defendant Richard Willner to participate (together with Defendants Taglione and Barbato) in a wholly fictitious hit-and-run collision involving Taglione's Allstate-insured automobile.

34. Iannucci was later taken by Taglione to (1) a personal-injury attorney and (2) a chiropractor to pursue a false claim in connection with her fictitious injuries.

35. Iannucci confirmed that all of the checks issued by Allstate in connection with her Allstate claim number arose out of the fictitious accident she staged with her fellow co-conspirators on February 29, 1996.

36. Allstate paid in excess of Three Hundred Thousand Dollars ($300,000.00) in connection with to the defendants' fraudulent auto repair services, auto rental services,

and bodily injury claims that were never rendered, greatly exaggerated or entirely fictitious. In support of these claims, the primary evidence (and in many instances the only evidence) advanced by the defendants in support of their claims were the false representations and documents generated by the defendants and forwarded to the plaintiff by the U.S. Mail.

37. The defendants used the United States Postal Service to submit fraudulent claim documentation on a continuous basis during the period covered by the Complaint.

38. The documentation and representations made by the defendants and the documentation in support of the fraudulent insurance claims forwarded to the plaintiff by U.S. Mail and/or telephone wires by the defendants were created in connection with reported motor vehicle accidents/losses which shared many of the following common denominators:

(a) The subject vehicle alleged to have sustained property damage was unattended at the time of the alleged loss;

(b) The alleged accidents involved only the insured defendants' vehicle, or in the limited cases where a third party was actually involved, that third party was acting in concert with the insured defendants;

(c) The vehicle owned and/or operated by the insured defendants in advancing the fraudulent insurance claim was encumbered by a lien held by either Amity Motors or Friendship Autobody;

(d) Alleged damage to the insured's vehicle resulted from bogus hit and run claims; and

(e) Alleged damage to the insured's vehicle resulting from alleged acts of vandalism or acts of God while the vehicle was unattended. The claims that the defendants participated in created numerous links with one another, as set forth with particularity in the Complaint that indicate the fraudulent nature of the documentation and ongoing conspiratorial enterprise relationship that existed among the participants.

39. The pattern of criminally fraudulent conduct by defendants injured Allstate in its business and property by reason of the conduct summarized above. The adjustment of an auto insurance claim, in the ordinary course of Allstate's insurance business, involves dozens of routine mailings, and depending upon the size and complexity of a given claim, hundreds, of mailings.

40. For instance, as a matter of its routine business practice, Allstate mails all checks issued in payment of claims and to claim-related vendors through the U.S. Mails.

41. Each claim detailed in Allstate's Complaint, involved at least one use of the U.S. Mails, including the mailing of the notice of claim, the initial policy, application for insurance, appraisals, rental vehicle documentation, medical treatment records and invoices, insurance payments, claim vendor documents and payments, claim settlement checks and the return of cancelled payment drafts to the financial institution(s) from which the draft(s) were drawn, as well as the return of claim payment checks to Allstate's accounting office.

42. All of the claims payments set forth in the following chart were paid in connection with and in reliance upon the fraudulent claims advanced by the defendants, and do not represent payments for legitimate claims and/or claim-related expenses.

43. All of the checks detailed in the chart below traveled through the U.S. Mails.

44. Allstate's actual, liquidated damages resulting from the identified fraudulent payments total $ 324,332.00.

45. In reliance upon the fraudulent representations and pattern of conduct engaged in by the defendants Allstate issued the following payments (copies of the Allstate checks (front and back) are filed together herewith):

| PAYEE | VEHICLE | POLICY # | DOL | CLAIM # | AMOUNT | ENDORSEMENTS / CO-SIGNERS |
|---|---|---|---|---|---|---|
| Millicent Maynard | 88 Cadillac | 619018092 | 2/7/91 | 1440295563 - K2 | $500.00 | Millicent Maynard |
| Metropolitan Ins. Co. (insured: Millicent Maynard) | 91 Dodge Dynasty | 619018092 | 9/21/92 | 1440544391 | $1,070.28 | |
| Millicent Maynard | 88 Cadillac | 619018092 | 1/13/91 | 1440266946 - K1 | $500.00 | Millicent Maynard |
| Millicent Maynard and Friendship A/B | 88 Cadillac | 619018092 | 1/13/91 | 1440266946 - K1 | $7,102.40 | Millicent Maynard, Friendship Autobody, Raymond Huelbig (Drawer Signature: Clarence Nealy) |
| Millicent Maynard & Amity Motors | 88 Cadillac | 619018092 | 9/30/91 | 1440413746 - K3 | $4,333.71 | Millicent Maynard, Amity Motors, Raymond Huelbig, Friendship Autobody |
| Alan Maynard and Narragansett | 91 Dodge Dynasty | 619018092 | 9/21/92 | 1440544391 - K4 | $2,537.11 | Alan Maynard, Friendship Autobody, Raymond Huelbig (Drawer Signature: Clarence Nealy) |
| Friendship Autobody (Insured: Millicent Maynard) | 88 Cadillac | 619018092 | 2/7/91 | 1440295563 - K2 | $5,208.12 | Friendship Autobody, Raymond Huelbig (Drawer Signature: Clarence Nealy) |
| Amity Motors and Attorney Raymond Pezza, Esq. (Insured: Millicent Maynard) | 78 Mercedes 280 (Loaner) | 619018092 | 10/31/92 | 1440559175 - K7 | $3,621.80 | Amity Motors, Raymond Huelbig, Friendship Autobody |
| Manuel Barros II and Friendship Autobody | 85 Jaguar | 019484975 | 1/21/91 | 1440269494 - D4 | $13,141.11 | Manuel Barros, Friendship Autobody, Raymond Huelbig |
| Manuel Barros II | 85 Jaguar | 019484975 | 1/21/91 | 1440269494 - D4 | $500.00 | Manuel Barros |
| Manuel Barros II, Friendship Autobody | 86 Jaguar | 019484975 | 9/27/91 | 1440413084 - D9 | $4,006.92 | Manuel Barros, Friendship Autobody, Raymond Huelbig |
| Manuel Barros II, Friendship Autobody | 86 Jaguar | 019484975 | 9/12/91 | 1440413068 - D8 | $3,017.36 | Manuel Barros, Friendship Autobody, Raymond Huelbig |
| Friendship Autobody (Insured: Manuel Barros II) | 78 Mercedes 450SL (Loaner) | 019484975 | 8/19/91 | 1440371936 - D7 | $5,744.01 | Friendship Autobody, Raymond Huelbig |

| PAYEE | VEHICLE | POLICY # | DOL | CLAIM # | AMOUNT | ENDORSEMENT/ COMMENTS |
|---|---|---|---|---|---|---|
| Manuel Barros II | 86 Jaguar | 019484975 | 8/15/91 | 1440352357 - D6 | $500.00 | Manuel Barros II |
| Manuel Barros II | 83 BMW (Palmiscano Claim) | 019484975 | 2/18/92 | 1440468708 - D10 | $500.00 | Manuel Barros II |
| Manuel Barros II and Amity Motors | 86 Jaguar | 019484975 | 6/12/91 | 1440331435 - D5 | $3,936.53 | Manuel Barros II, Amity Motors, Raymond Huelbig, Friendship Autobody |
| Manuel Barros II | 86 Jaguar | 019484975 | 6/12/91 | 1440331435 - D5 | $500.00 | Manuel Barros II and Cilla Reilly |
| Manuel Barros II and Friendship A/B | 85 Jaguar | 019484975 | 7/23/90 | 1440197470 - D1 | $8,701.92 | Manuel Barros II, Friendship Autobody, Raymond Huelbig (Drawer Signature, Clarence Nealy) |
| Cilla Reilly | 90 Nissan | 084187917 | 3/6/91 | 1440289450 - G3 | $3,600.92 | Cilla Reilly (Drawer Signature: Clarence Nealy) |
| William K. and Cilla Reilly | 90 Nissan | 084187917 | 3/6/91 | 1440289450 - G3 | $600.00 | William K. Reilly and Cilla Reilly |
| William K. and Cilla Reilly | 90 Nissan | 084187917 | 3/6/91 | 1440289450 - G3 | $500.00 | William K. Reilly and Cilla Reilly |
| Cilla Reilly | 90 Nissan | 084187987 | 7/23/91 | 1440344354 | $4,341.56 | Cilla Reilly, William K. Reilly |
| William K. and Cilla Reilly, and Attorney Raymond Pezza and Attorney Gerald M. DeCelles and Friendship Autobody and Tabco Auto Rental | 90 Nissan | 084187917 | 10/15/91 | 1440419529 - G7 | $6,773.52 | William Reilly, Cilla Reilly, Ray Huelbig, Tabco Auto Rental, Friendship Autobody (two other signatures) |
| Cilla Reilly and Friendship Autobody | 90 Nissan | 019534332 | 10/31/92 | 1440558466 - G4 | $5,905.78 | Endorsed under protest by Cilla Reilly, Friendship Autobody, Raymond Huelbig |
| Cilla Reilly (R38240161) | 90 Nissan | 019534332 | 10/26/92 | 1440556940 - G8 | $673.49 | Cilla Reilly |
| William K. and Cilla Reilly | 90 Nissan | 084187917 | 5/23/90 | 1440173829 | $12,050.01 | |
| Friendship Autobody (Insured: Cilla Reilly) | 90 Nissan | 084187917 | 5/23/90 | 1440173829 | $783.34 | (Drawer Signature, Clarence Nealy) supplement payment. |
| Cilla Reilly | 90 Nissan | 084187917 | 10/31/90 | 1440236477 | $5,638.66 | (Drawer Signature: Clarence Nealy) |
| William K. and Cilla Reilly | 90 Nissan | 084187917 | 10/31/90 | 1440236477 | $340.00 | |
| Gregory Williams and Friendship Autobody | 88 Lincoln | 019479619 | 6/21/91 | 1440333852 - J5 | $3,970.02 | Gregory Williams, Friendship Autobody, Raymond Huelbig |
| Gregory Williams and Amity Motors | 88 Lincoln | 019479619 | 12/6/91 | 1440440855 - J7 | $4,671.48 | Gregory Williams, Amity Motors, Raymond Huelbig, Friendship Autobody |
| Friendship Autobody (Insured: Gregory Williams) | 88 Lincoln | 019479619 | 12/6/91 | 1440440855 - J7 | $344.80 | Friendship Autobody, Raymond Huelbig (Drawer Signature: Clarence Nealy) |
| Friendship Autobody (Insured: Gregory Williams) | 87 Oldsmobile | 019479619 | 1/3/91 | 1440262804 - J3 | $5,676.27 | Friendship Autobody, Raymond Huelbig (Drawer Signature: Clarence Nealy) |
| Friendship Autobody (Insured: Gregory | 82 Chevy | 019479619 | 12/22/91 | 1440318804 - J9 | $863.72 | Friendship Autobody, Raymond Huelbig |

| PAYEE | VEHICLE | POLICY | D.O.L. | CLAIM # | AMOUNT | ENDORSEMENTS/ COMMENTS |
|---|---|---|---|---|---|---|
| Williams) | | | | | | |
| Friendship Autobody Insured: Gregory Williams | 88 Lincoln | 019479619 | 8/19/91 | 1440380853 - J6 | $4,684.11 | (Drawer Signature: Clarence Nealy) |
| Gregory Williams and F-Ship A/B | 87 Oldsmobile | 019479619 | 11/8/90 | 1440239422 - J2 | $6,122.63 | (Drawer Signature: Clarence Nealy) |
| Gregory Williams | 87 Oldsmobile | 019479619 | 2/9/91 | 1440279220 - J4 | $500.00 | Gregory Williams |
| Gregory Williams and Friendship A/B | 87 Oldsmobile | 019479619 | 2/9/91 | 1440279220 - J4 | $6,462.58 | Gregory Williams, Friendship Autobody, Raymond Huelbig (Drawer Signature: Clarence Nealy) |
| Gregory Williams | 87 Oldsmobile | 019479619 | 7/28/90 | 1440199658 - J1 | $7,457.40 | Gregory Williams, Friendship Autobody, Raymond Huelbig |
| Amity Motors and Attorney Raymond R. Pezza, Esq. (Insured: Ruth M. Ortiz) | 88 Sterling (Loaner) | 082010008 | 11/25/92 | 1440568572 - J12 | $6,501.54 | Ray Pezza, Amity Motors, Raymond Huelbig |
| Ruth M. Ortiz | 91 Toyota Tercel | 019501887 | 11/11/91 | 1440431227 - J3 | $500.00 | Ruth Ortiz |
| Friendship Autobody (Insured: Ruth Ortiz) | 91 Toyota Tercel | 019501881 | 12/1/90 | 1440252482 - I1 | $6,045.57 | Friendship Autobody, Raymond Huelbig (Drawer Signature, Clarence Nealy) |
| Ruth M. Ortiz | 91 Toyota Tercel | 082010008 | | 1440612354 - I8 | $3,388.25 | Ruth Ortiz |
| Theresa Meunier (insured: Ruth Ortiz) | 91 Toyota Tercel | 082010008 | 2/7/93 | 1440612354 - I8 | $3,500.00 | Theresa Meunier |
| Eva Romagnoli (insured: Ruth Ortiz) | 91 Toyota Tercel | 082010008 | 2/7/93 | 1440612354 | $5,000.00 | Eva Romagnoli |
| Rudolph Romagnoli (insured: Ruth Ortiz) | 91 Toyota Tercel | 082010008 | 2/7/93 | 1440612354 | $1,301.63 | Rudolph Romagnoli |
| Ruth Ortiz and Amity Motors and Friendship Autobody | 91 Nissan Maxima | 109501887 | 10/31/91 | 1440428074 - J11 | $5,542.44 | Ruth Ortiz, Amity Motors, Raymond Huelbig, Friendship Autobody |
| Citizen's Bank and Ruth Ortiz | 91 Toyota Tercel | 019501887 | 4/14/92 | 1440356713 - I5 | $5,153.79 | Endorsed Under Protest by Ruth Ortiz, Citizen's Savings Bank, Friendship Autobody, Raymond Huelbig |
| Ruth Ortiz (Rental Reimbursement) | 91 Toyota Tercel | 019501887 | 4/14/92 | 1440356713 - I5 | $150.00 | Ruth Ortiz |
| Vetter & White (Insured: Ruth Ortiz) | 91 Toyota Tercel | 019501887 | 4/14/92 | 1440356713 - I5 | $197.79 | Vetter & White, Inc. |
| Ruth Ortiz | 91 Toyota Tercel | 019501887 | 1/8/91 | 1440265518 - I2 | $500.00 | Ruth Ortiz |
| Eugene Pontbriant (Insured: Ruth Ortiz) | 91 Toyota Tercel | 082010008 | 2/7/93 | 1440612354 - I8 | $3,700.00 | Eugene Pontbriant |
| Rudolph Ronagnoli (Insured: Ruth Ortiz) | 91 Toyota Tercel | 082010008 | 2/7/93 | 1440612354 - I8 | $7,000.00 | Rudolph Ronagnoli |
| Karen L. Brown and Amity Motors and Friendship A/B | 86 Lincoln | 019516898 | 7/23/91 | 1440346516 - L3 | $4,600.35 | Karen L. Brown, Amity Motors, Raymond Huelbig, Friendship Autobody |
| Karen L. Brown | 86 Lincoln | 019516898 | 10/3/91 | 1440417804 - L1 | $2,910.22 | Karen L. Brown, |

| PAYEE | VEHICLE | POLICY # | DOL | CLAIM # | AMOUNT | ENDORSEMENTS / COMMENTS |
|---|---|---|---|---|---|---|
| and Amity Motors | | | | | | Amity Motors, Raymond Huelbig, Friendship Autobody |
| Karen L. Brown | 86 Lincoln | 019516898 | 10/3/91 | 1440417804 - L1 | $500.00 | Karen L. Brown |
| Karen L. Brown and Amity Motors | 86 Lincoln | 019516898 | 11/1/91 | 1440430229 - L2 | $3,598.24 | Karen L. Brown, Amity Motors, Raymond Huelbig, Friendship Autobody |
| South County Appraisers (Insured: Karen L. Brown) | 86 Lincoln | 019516898 | 11/1/91 | 1441430229 - L2 | $86,50 | |
| Karen L. Brown | 86 Lincoln | 019516898 | 10/3/91 | 1440417804 - L1 | $500.00 | Karen L. Brown |
| Deborah Buton | 85 Jaguar | 019484975 | 12/8/90 | 1440254090 | $100.00 | Debra Paul |
| Manuel Barros II (R38198402) | 85 Jaguar | 019484975 | 9/24/90 | 1440221529 - D2 | $500.00 | Manual Barros (AB Ray) |
| Amity Motors and Manuel Barros | 85 Jaguar | 019484975 | 9/24/90 | 1441221529 - D2 | $9,661.23 | Manuel Barros, Amity Motors, Raymond Huelbig |
| Raymond Huelbig | 93 Nissan Maxima | 619084033 | 9/1/93 | 1440766309 - E12 | $500.00 | Raymond Huelbig |
| Raymond and Shawnn Huelbig | 86 Jaguar | 084438265 | 1/12/91 | 1440266797 - E3 | $600.00 | Raymond Huelbig, Shawnn Huelbig |
| Raymond Huelbig | 85 Jaguar | 084438265 | 2/26/91 | 1440285383 - E4 | $7,550.41 | Raymond Huelbig (Drawer Signature: Clarence Nealy) |
| Raymond and Shawnn Huelbig | 85 Jaguar | 084438265 | 2/26/91 | 1440285383 - E4 | $600.00 | Raymond Huelbig, Shawnn Huelbig |
| Raymond and Shawnn Huelbig | 85 Jaguar | 084438265 | 10/31/90 | 1440236409 - E2 | $5,784.82 | Raymond Huelbig, Shawnn Huelbig (Drawer Signature: Clarence Nealy) |
| Raymond and Shawnn Huelbig | 85 Jaguar | 084438265 | 10/31/90 | 1440236469 - E2 | $600.00 | Raymond Huelbig, Shawnn Huelbig |
| Raymond and Shawnn Huelbig | 86 Jaguar | 084438265 | 1/12/91 | 1440266797 - E3 | $500.00 | Raymond Huelbig, Shawnn Huelbig |
| Raymond M. Huelbig | 91 Nissan | 019529838 | 1/14/92 | 1440454351 - E8 | $5,999.36 | Raymond M. Huelbig |
| Raymond M. Huelbig | 91 Nissan Maxima | 019529838 | 11/11/92 | 1440562039 - E11 | $2,452.32 | |
| Raymond M. Huelbig | 91 Nissan | 019529838 | 1/14/92 | 1440454351 - E8 | $500.00 | "Accepted as partial payment for loss Raymond Huelbig" |
| Raymond Huelbig, West Bay Management Company and Friendship Autobody | 91 Nissan | 019529838 | 1/14/92 | 1440454351 - E8 | $324.30 | Raymond Huelbig, West Bay Management, Peter Williams, Friendship Autobody. |
| Raymond M. Huelbig | 91 Nissan | 019529838 | 6/29/92 | 1440512885 - E10 | $743.33 | Endorsed under protest Raymond Huelbig |
| Raymond M. Huelbig | 91 Nissan | 019529838 | 6/29/92 | 1440512885 - E10 | $7,468.02 | Endorsed under protest Raymond Huelbig |
| Raymond and Shawnn Huelbig | 86 Jaguar | 084438265 | 3/6/90 | 1440161139 - E1 | $500.00 | Raymond Huelbig and Shawnn Huelbig |
| Raymond M. Huelbig | 88 Jaguar | 019529838 | 5/28/92 | 1440501508 - E9 | $9,464.33 | Under Protest Raymond Huelbig |
| Raymond M. Huelbig | 91 Nissan | 019529838 | 6/29/92 | 1440512885 - E10 | $500.00 | Raymond Huelbig |
| Raymond M. Huelbig and Attorney Raymond Pezza | 91 Nissan | 019529838 | 6/29/92 | 1440512885 - E10 | $1,964.00 | Raymond Pezza, Raymond Huelbig |
| Josephine Williams (Insured: Julio A. Silva) | 81 Lincoln | 084476515 | 2/15/91 | 2390385546 - H2 | $256.15 | Josephine Williams, Julio A. Silva |

| PAYEE | VEHICLE | POLICY | DOL | CLAIM # | AMOUNT | ENDORSEMENT [illegible] |
|---|---|---|---|---|---|---|
| Josephine Williams (Insured: Julio A. Silva) | 81 Lincoln | 084476515 | 2/15/91 | 2390385546 - H2 | $6,339.75 | Josephine Williams (SDJ Ray) |
| Julio A. Silva | 84 Chevy Blazer | 084476515 | 9/23/91 | 2390663958 - H3 | $1,223.79 | Julio A. Silva |
| Jose Pires (Insured: Leo A. Silva) | 88 Mercedes | 084476515 | 7/29/90 | 2390276927 - H1 | $15,246.65 | Jose Pires (Drawer Signature: Clarence Nealy) |
| Lori Freeman and Chase Manhattan Bank | 91 Volvo 240 | 019485913 | 9/28/93 | 1440774410 - C2 | $6,947.12 | Lori Freeman, Friendship Autobody |
| Lori Freeman and Citizen's Bank | | 019485913 | 11/24/89 | 1440301735 | $1,091.92 | Lori Freeman, Citizen's Savings Bank without recourse |
| Lori Freeman | | 019485913 | 11/24/99 | 1440301735 | $250.00 | |
| Lori Freeman and Murray's A/B | | 019485913 | 8/31/90 | 1440212502 - C3 | $5,077.89 | Lori Freeman (Drawer Signature: Clarence Nealy) |
| Lori Freeman | | 019485913 | 11/24/89 | 1440301735 | $250.00 | Lori Freeman |
| Lori Freeman | | 019485913 | 11/24/89 | 1440301735 | $250.00 | Lori Freeman |
| Lori Freeman | | 019485913 | 8/31/90 | 1440212502 | $500.00 | Lori Freeman |
| Lori Freeman and Attorney Lawrence Goldberg | | 019485913 | 8/31/90 | 1440212502 | $674.70 | Lori Freeman and Lawrence I. Goldberg |
| Lori Freeman and Chase Manhattan Bank | 91 Volvo 240 | 019485913 | 11/16/92 | 1440563458 - C1 | $4,704.13 | Lori Freeman, Friendship Autobody, Chase Manhattan Bank, Raymond Huelbig. |
| Lori Freeman and Friendship A/Body | 91 Volvo 240 | 019485913 | 9/28/93 | 1440774410 - C2 | $332.25 | Lori Freeman, Friendship Autobody, Raymond Huelbig |
| Robert D. Taglione | 89 Cadillac | 082045107 | 8/24/95 | 1441043103 - A1 | $347.75 | |
| Robert Taglione and Attorney Peter D'Amico and Attorney James Burchfield | 89 Cadillac | 082045107 | 8/24/95 | 1441043103 - A1 | $2,090.00 | |
| Paula Cufoni and Peter D'Amico, Esq. and James Burchfield, Esq. | 89 Cadillac | 082045107 | 8/24/95 | 1441043103 - A1 | $882.00 | |
| Jean Zaniewski | 88 Oldsmobile | 025070140 | 6/4/96 | 1441172457 - B1 | $2,858.43 | |
| Robert D. Taglione | 89 Cadillac | 082045107 | 8/24/95 | 1441043103 - A1 | $2,039.93 | |
| Norman Trice and Attorney James Burchfield | 89 Cadillac | 082045107 | 8/24/95 | 1441043103 - A1 | $4,280.90 | |
| Robert Taglione | 84 Cadillac | 082045107 | 2/29/96 | 1441143011 - A2 | $2,802.04 | |
| Enterprise Rent-A-Car | 84 Cadillac | 082045107 | 1/29/96 | 1441143011 - A2 | $1,517.42 | |
| | | | | **Total** | **$324,332.00** | |
| | | | | | | |

46. Allstate also seeks recovery of its attorney's fees of $41,653.30, incurred and paid in the prosecution of this civil action.

48. On June 29, 2005, an Agreement for Judgment entered against Defendants Shawnn Huelbig and Raymond Huelbig (docket entry no. 147). On June 29, 2005, an Agreement for Judgment entered against Defendant Cilla Reilly (docket entry no. 146).

Allstate has settled with and dismissed all remaining claims against the balance of defendants, Norman Trice, Lori Freeman, Paula Cofoni, Jose Pires, Manray, Inc., Tabco Rentals, Tabco Realty, Amity Motors, Shondi Barbato, Robert Taglione, Millicent Maynard and Ruth Ortiz pursuant to Rule 41, Fed. R. Civ. P.

47. All the allegations in Allstate's Complaint and this affidavit are true and accurate to the best of my knowledge at the time each document was filed.

48. I certify that so far as any of the foregoing assertions are made upon information and belief, I believe the information to be true.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 27TH DAY OF SEPTEMBER, 2005.

Michael Bruno